ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2009 MAY 29 PM 2:24
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EMORY K. COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-067 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Emory K. Cooper ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability dating back to June 24, 2000, Plaintiff applied for DIB and SSI in September of 2000, with a protective filing date of August 15, 2000. Tr. ("R."), pp. 53-55, 225, 228-31. The Social Security Administration denied both his original claims and his requests for reconsideration. R. 23, 24, 25-28, 33-36, 232-39. Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"). R. 37. Represented by counsel, Plaintiff appeared and testified at a hearing on March 22, 2002. R. 250-82. The ALJ then issued an unfavorable decision dated September 27, 2002. R. 13-22. When the AC denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). R. 5-8. Having failed to convince the AC to review his case, Plaintiff filed his first civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. See Cooper v. Barnhart, CV 304-056 (S.D. Ga. July 20, 2004) (hereinafter "CV 304-056"). Because the ALJ failed to consider the entirety of the physicians' opinions in the administrative record, including those of Plaintiff's treating physicians, the Court, pursuant to sentence four of 42 U.S.C. § 405(g), reversed the Commissioner's decision and remanded the case to the Commissioner for further consideration. CV 304-056, doc. no. 12, *adopted by* doc. no. 14.

After his first case was remanded, Plaintiff filed new applications for DIB and SSI benefits, which were denied initially and upon reconsideration. R. 308. These applications were merged with the remanded claims, id., and a new hearing was scheduled for April 13, 2007. R. 381. Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. 322. The ALJ also heard testimony from a vocational expert ("VE"). R. 347. The ALJ issued an unfavorable decision on May 24, 2007. R. 305-19.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 24, 2000, the alleged onset date (20 C.F.R. §§ 404.1520, 404.1571, 404.920(b), 416.971).

2. The claimant has the following severe combination of impairments: low back pain and bulging discs for which he underwent surgical repair, a cyst on his right knee, and left shoulder injury (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity ("RFC") to perform light work[1] due to low back condition, right knee, and left shoulder pain. His limitations preclude climbing all ladders, ropes, and scaffolds but allow individual climbing, stooping, squatting, crouching, and overhead lifting with the left upper extremity for no more than 2 ½ hours during an eight-hour workday. Plaintiff has the ability to perform his past relevant work as a security guard for purposes of DIB benefits but is unable to perform any past relevant work for purposes of SSI benefits.[2] (20 C.F.R. §§ 404.1565, 416.965).

---

[1]Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

[2]Because the ALJ determined that Plaintiff could perform his past relevant work for DIB purposes, the sequential evaluation process for determining Plaintiff's eligibility for DIB benefits stopped. See 20 C.F.R. § 404.1520(a)(4)(iv).

> 5. Considering claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, for SSI purposes only.[3] (20 C.F.R. §§ 404.1560(c), 404.1566, 404.1568(d), 416.960(c), 416.966, and 416.968(d)). Accordingly, claimant has not been under a disability from June 24, 2000 through the date of this decision.

R. 310-19.

When the AC denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review his case, Plaintiff filed the current civil action in this Court, requesting a reversal or remand of the second adverse decision rendered in May 2007. Plaintiff argues in this case that the ALJ erred by (1) failing to properly describe the weight he gave to the opinions of Plaintiff's treating physicians, (2) failing to consider in combination his physical and mental impairments, and (3) failing to comply with the directions of the district court on remand.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not

---

[3] The VE testified at the hearing that those jobs would include work as a mail clerk, office helper, or storage rental clerk. R. 28-29.

4

decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to

determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Opinions of State Agency Physicians vs. Treating Physician's Opinion

Plaintiff argues that the ALJ failed to properly describe the weight accorded to the opinions of several of his treating physicians, including Dr. George Stefanis and Dr. Monroe C. Middlebrooks. The Commissioner argues in response that the ALJ properly considered the opinions of all these physicians, but discounted them because they were based on Plaintiff's self-described symptoms and because they had not evaluated Plaintiff as recently as the state agency physicians, whose opinions support the ALJ's findings. Thus, as part of Plaintiff's challenge to the weight given to the opinions of his treating physicians, Plaintiff also appears to be challenging the ALJ's assessment of his credibility as it relates to his subjective complaints of pain. Before addressing that issue, however, the Court first considers the ALJ's treatment of the opinions of Plaintiff's treating physicians and those of the state agency physicians.

In his opinion, the ALJ discusses Plaintiff's medical history at length. Notably, he discusses that Plaintiff was treated by Dr. Stefanis, a neurosurgeon, who performed Plaintiff's back surgery in August 2000. R. 311. According to the ALJ and Dr. Stefanis' treatment notes, Dr. Stefanis followed Plaintiff after his surgery, and in January 2001, Plaintiff was still experiencing radiating pain in his back. R. 136, 311. However, straight leg raises revealed only mild pain, and Plaintiff's x-rays in May 2001 were described by Dr. Stefanis "looking good." R. 190, 311, 577. Dr. Stefanis saw Plaintiff again in July 2001 and

the ALJ noted that, even though Plaintiff reported neck and shoulder pain, he had "good strength in all muscle groups tested." R. 311. Dr. Stefanis reviewed Plaintiff's x-rays once again, and, as described by the ALJ, "the fusions appeared to be healing very nicely" and that the fusion in the L3 to L5 region were "solid." R. 311-12. However, the ALJ noted Dr. Stefanis' opinion that due to the degree of pain Plaintiff had reported experiencing, "he may not be able to return to work doing the type of work he was doing or any type of manual labor." R. 312.

The ALJ also addresses the opinion of Dr. Middlebrooks, Plaintiff's primary care physician. As the ALJ discusses, according to Dr. Middlebrooks' records, Plaintiff continued to report chronic low back pain through 2004 and was unable to do any "prolonged sitting, standing, bending, stooping, or lifting." R. 312-13. The ALJ goes on to note Dr. Middlebrook's opinion that based on Plaintiff's self-reported symptoms and need for narcotic pain medication, Plaintiff would be "unable to perform any gainful employment." R. 313.

As to the opinions of the state agency physicians, the ALJ discusses the consultative examination performed by Dr. Vasudev Kulkarni in December 2004. R. 312-13. While Dr. Kulkarni's examination revealed some restrictions on Plaintiff's movement, the exam was otherwise normal. R. 312, 647-54. Moreover, the ALJ noted that X-rays performed at that time showed "intact fusion" of the discs that had previously been giving Plaintiff trouble. R. 312, 649. Of particular note, as stated by the ALJ, is Dr. Kulkarni's report that Plaintiff was independent in his daily activities. Id. In addition, four other state agency physicians reviewed Plaintiff's medical records, all of whom opined that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, in addition to being able to sit, stand,

or walk for six hours in an eight-hour workday. R. 167, 182, 669, 693. The most serious postural limitation noted by any of these doctors was that Plaintiff could not climb ladders, ropes, or scaffolds. R. 670, 694. The ALJ noted the opinions of these state agency physicians that Plaintiff could perform "light exertional work" and specifically concurred with their assessments. R. 317.

With those opinions in mind, the Court turns to the standards used to weigh the opinions of a claimant's treating physicians with those of non-examining state agency physicians. According to Social Security Ruling 96-6p, findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p.

At the same time, it is well-settled in the Eleventh Circuit that a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per*

*curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. §§ 404.1527(e) and 416.927(e).

Here, several state agency physicians opined, after reviewing Plaintiff's records, that Plaintiff could lift various amounts of weight and could sit, stand, or walk for six hours a day, with the restriction on climbing noted above. The ALJ specifically concurred with these assessments, and these characteristics are encompassed in the definition of light work, which the ALJ found Plaintiff could perform. Moreover, the ALJ properly considered this evidence as expert opinion evidence from nonexamining sources in assessing Plaintiff's capabilities. See SSR 96-6p.

While the opinions of Dr. Stefanis and Dr. Middlebrooks would normally receive substantial weight as treating physician opinions, the Court finds that the ALJ adequately explained his reasons for discounting them and instead relying on those of the state agency physicians. As noted above, the ALJ may properly discount the opinion of a treating physician if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583-84. As to the opinion of Dr. Stefanis, the Court notes that this opinion is not

inconsistent with the ALJ's finding that Plaintiff had the RFC to perform light work, with the prohibition on climbing noted above. Indeed, Dr. Stefanis noted that Plaintiff *might* not be able to perform manual labor or return to work he had previously performed, which included work as a hospital maintenance worker, which, as the VE testified, involved medium to heavy exertion. R. 349-50. Notably, Dr. Stefanis does not state that Plaintiff cannot perform any work; rather, he simply opines that Plaintiff could not perform work demanding heavy exertion. Thus, the ALJ was not required to state his reasons for discounting Dr. Stefanis' opinion because it cannot be said that his opinion contradicts the ALJ's determination that Plaintiff could still perform light work.

Regarding Dr. Middlebrooks' opinion, the Court notes that this doctor opined in April 2007 that Plaintiff could not work; however, no treatment notes were submitted with that opinion. Thus, Plaintiff submitted no objective medical evidence in support of this opinion, and Dr. Middlebrooks' records are devoid of any clinical findings supporting his opinion. Accordingly, the ALJ did not err in discounting Dr. Middlebrooks' opinion because it was not supported by objective medical evidence or the physician's own medical records.

In discounting the opinions of Plaintiff's treating physicians, the ALJ also notes that Plaintiff's leisure activities and daily chores indicate that "his complaints to the doctors are over-exaggerated to the extent he is precluded from performing" light work. R. 313. He also notes "[Plaintiff's] activities of daily living contradict the level of pain the doctors feel he is experiencing." Id. More to the point, the ALJ states that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his pain] are not entirely credible." R. 317. Thus, the Court turns to the issue of whether the ALJ properly discounted

Plaintiff's complaints of pain as part of his decision to discount the opinions of Plaintiff's treating physicians.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

Of particular note here, "[c]redibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

In this case, the ALJ found evidence of an underlying medical condition, namely that Plaintiff had the severe impairments of low back pain, surgically repaired bulging discs, a cyst on the right knee, and left shoulder pain. As noted above, in considering Plaintiff's functional limitations associated with his back pain, the ALJ noted that the severity of the pain reported to his doctors was contradicted by his activities of daily living and his ability to do chores. R. 17. In explaining his reasons for discrediting Plaintiff's complaints of pain to his doctors, the ALJ noted Plaintiff's testimony at the hearing that he is able to drive his daughter to the bus stop every day and washes dishes while she is at school. R. 316. Notably, Plaintiff also testified that he is constantly "up and down." Id. Furthermore, the ALJ also noted that Plaintiff can sit for 30 to 60 minutes at a time, stand for 20 to 30 minutes, and walk for 20 to 30 minutes. Id. Based on these specific findings, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." R. 317. However, he found that Plaintiff's complaints "concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely credible." Id.

The Court finds that the ALJ sufficiently articulated his reasons for discrediting Plaintiff's complaints of pain to his doctors, and this credibility determination is supported by substantial evidence in the record. Of course, the evidence may have preponderated in favor of Plaintiff and a decision not to discount Plaintiff's complaints of pain to his doctor. Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239). Indeed, Plaintiff also

testified that it is difficult for him to bend over and that he depends on his wife to maintain their farm. R. 342, 346. However, the ALJ did point to specific, objective evidence that undermined Plaintiff's allegations of unmanageable pain. Moreover, Plaintiff's daily activities provide support for the ALJ's conclusion that Plaintiff's medical conditions could not have reasonably resulted in the symptoms and limiting effects that were as severe and persistent as he described. Based upon the entire record, the ALJ had substantial evidence to conclude that Plaintiff's complaints to his doctors regarding the extent and intensity of his pain were simply not credible. Thus, the record demonstrates that the ALJ satisfied the Holt requirements by providing sufficient reason for his credibility determination.

In sum, the ALJ was entitled to rely on the opinions of the state agency physicians and properly considered those opinions along with those of Plaintiff's treating physicians. Dr. Middlebrooks' opinion was the only opinion inconsistent with the ALJ's finding that Plaintiff could perform light work (with the above-noted restrictions), and the ALJ properly discounted this opinion because it was inconsistent with the objective medical evidence and his own treatment records. Moreover, to the extent the opinions of the treating physicians were based on Plaintiff's subjective complaints of pain, the Court finds that the ALJ adequately articulated his reasons for discounting those complaints (and in turn, the treating physicians' opinions) where Plaintiff's daily activities contradicted the extent and severity of the pain he claimed to be experiencing. Thus, remand is not appropriate on this ground.

### B.     Consideration of Combination of Impairments

Plaintiff next argues that the ALJ erred by failing to consider his combination of impairments. However, it is unclear from Plaintiff's brief whether he is arguing that the ALJ

erred by failing to consider his non-severe impairments of anxiety and depression in combination with his severe impairments, or that the ALJ erred in finding that his anxiety and depression were not severe impairments. With respect to the first argument, the ALJ must consider the combined effects of all of a claimant's impairments in determining whether the claimant is disabled, without regard to their severity. McSwain v. Bowen, 814 F.2d 617, 620 (11th Cir. 1986); see also 20 C.F.R. §§ 404.923, 404.1523. Here, the ALJ specifically found that Plaintiff had the following "severe combination of impairments: low back pain and bulging discs for which he underwent surgical repair, cyst on right knee, and left shoulder injury." R. 310. The ALJ went on to discuss the medical records related to Plaintiff's back, knee, and shoulder problems. R. 311-14. He also discussed at length the evidence related to Plaintiff's anxiety and depression, particularly the psychological examinations performed by Dr. Marvin L. Long and Dr. John C. Whitley. R. 313-15. As discussed more fully below, he found these mental impairments to be non-severe. R. 315. However, at the end of his discussion of all the evidence, the ALJ stated specifically that "[t]he combined effect and combination of claimant's impairments along with his activities of daily living do not significantly limit his ability to perform basic work-related activities." R. 315.

In the Eleventh Circuit, use of the language indicating consideration of an impairment, or combination of impairments, is a sufficient basis upon which to conclude that the ALJ considered the combined effect of Plaintiff's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (*per curiam*) (citing Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (*per curiam*)). The concluding language used

by the ALJ, coupled with his general discussion of the medical evidence related to Plaintiff's severe and non-severe impairments, clearly indicates that he considered Plaintiff's impairments in combination. Accordingly, to the extent Plaintiff contends that the ALJ failed to properly consider his severe and non-severe impairments in combination, this argument is without merit.

The Court now turns to the second argument that the ALJ erred in finding that Plaintiff's mental impairments of anxiety and depression were not severe. R. 315. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his problems significantly affect his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)(*per curiam*). At the second step of the sequential

evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985), for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

16

In reaching his determination that Plaintiff's anxiety and depression were non-severe impairments and did not affect his ability to perform light work, the ALJ discussed the consultative examinations performed by Dr. Long and Dr. Whitley at length. R. 313-15. As noted by the ALJ, Plaintiff underwent evaluations by Dr. Long in 2000 and in 2005. R. 314. In his first evaluation, Dr. Long noted that Plaintiff had a normal vocabulary and was able to communicate with him. R. 126, 313. The ALJ also noted that according to Dr. Long, Plaintiff was cooperative during the interview and was "alert, coherent, and aware" of his circumstances. R. 126-27, 313. While Plaintiff exhibited a "general slow learner profile," Dr. Long determined that Plaintiff was capable of making decisions and performing simple tasks. R. 127, 313. The ALJ also discussed Dr. Long's evaluation performed in 2005. Specifically, the ALJ noted that Plaintiff reported feelings of anxiety and depression at this time, but these were attributed to "realistic stress and pressure." R. 314, 657. Of particular note is the ALJ's reference to Dr. Long's finding that Plaintiff was not experiencing more serious psychological problems such as delusions or psychosis. R. 314, 657.

Dr. Whitley also evaluated Plaintiff, and the ALJ noted that while Plaintiff reported "mild and consistent" symptoms of depression, Dr. Whitley had found that Plaintiff was able to manage daily activities and could take care of himself. R. 314, 663-64. Dr. Whitley judged Plaintiff to have fair insight, judgment, and impulse control and was capable of socializing with others, particularly his family. R. 314, 664. Importantly, Dr. Whitley gave Plaintiff a Global Assessment of Functioning ("GAF") score of 62, which is indicative of only a moderate impairment in functioning, and the ALJ's opinion noted that Dr. Whitley found that Plaintiff was only "mildly limited" by his psychological issues. R. 314, 664.

Though not discussed by the ALJ, Plaintiff did report to Dr. Whitley that he was not under treatment for any psychological issues at the time of the examination and denied experiencing suicidal or homicidal ideations, phobias, hallucinations, or delusions. R. 663.

These evaluations demonstrate that the ALJ's conclusion that Plaintiff's depression and anxiety were non-severe impairments is supported by substantial evidence. As explained above, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his mental illness significantly affects his ability to perform basic work activities. Here, Dr. Whitley found that Plaintiff was only mildly limited by any psychological issues he may have had, and Plaintiff reported no serious psychological problems. Plaintiff's GAF score of 62 also supports the ALJ's conclusion and belies any contention that Plaintiff's depression and anxiety constitute severe impairments. Although Plaintiff's GAF score of 62 is suggestive of some mental impairment, courts have held that significantly lower GAF scores are not indicative of severe impairment. See Henson v. Barnhart, 373 F. Supp.2d 674, 681-83 (E.D. Tex. 2005) (diagnosis of "major depression" and GAF score of 50 did not preclude ALJ from finding no severe impairment); Deford v. Barnhart, 347 F. Supp.2d 1174, 1180-81 (M.D. Ala. 2004) (GAF of 50 not suggestive of severe mental impairment). Accordingly, it cannot be said the ALJ erred by classifying Plaintiff's depression and anxiety as non-severe impairments.

In sum, the ALJ's discussion of the medical evidence related to both Plaintiff's severe and non-severe impairments, as well as his concluding language at the end of his discussion of this evidence, is sufficient to show that the ALJ considered all of Plaintiff's impairments in combination. To the extent Plaintiff contends that the ALJ erred in determining that his

mental impairments of anxiety and depression were not severe, there is substantial evidence to support the ALJ's finding in this regard, and Plaintiff has not met his burden of demonstrating that his mental impairments affect his ability to work. Accordingly, these arguments do not provide a basis for remand.

## C. Compliance with Remand Instructions

Plaintiff's final argument is that the ALJ failed to comply with the Court's instructions on remand. Plaintiff correctly notes that the ALJ was required to consider "the entirety of the physicians' opinions in the administrative record," CV 304-056, doc. no. 12, *adopted by* doc. no. 14, but curiously argues that the ALJ somehow disregarded this instruction by considering Plaintiff's daily living activities in discounting the treating physicians' opinions. The Court has already determined that the ALJ properly considered and discounted the opinions of Plaintiff's treating physicians on remand. Nevertheless, the Court addresses Plaintiff's argument that the ALJ erred in relying on Plaintiff's activities of daily living in rejecting those opinions.

Plaintiff correctly notes that "participation in everyday activities of short duration, such as housework or fishing" is not inconsistent with disability. Lewis, 125 F.3d at 1441. However, Plaintiff's argument ignores the fact that a treating physician's opinion may be rejected for other reasons, including the lack of supporting objective medical evidence, the conclusory nature of the opinion, or inconsistency with the physician's medical records. Id. at 1440; Edwards, 937 F.2d at 583-84. Though the ALJ did state that Plaintiff's participation in daily living activities was one reason he discounted the treating physicians' opinions, his discussion of these opinions reveals, as noted above, that Dr. Stefanis' opinion was not

inconsistent with the ALJ's finding that Plaintiff could still perform light work and that Dr. Middlebrooks' opinion was not supported by objective medical evidence. Simply put, there were other legitimate reasons for discounting the treating physicians' opinions, and it cannot be said that the ALJ relied solely on Plaintiff's participation in daily activities in reaching his decision. Thus, this argument also fails to provide a basis for remand.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 27th day of May, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE